UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
DANA STEPHENSON,

                    Plaintiff,         No. 20-cv-01332 (PMH)

    -against-                            THIRD AMENDED
                                             COMPLAINT

EXCLUSIVE MOTOR-SPORTS LLC, EXCLUSIVE    Jury Demanded
MOTOR SPORTS & COLLISION CENTER LLC,
EXCLUSIVE MOTOR CARS LLC, and
BETHPAGE FEDERAL CREDIT UNION,

                  Defendants.
_____x

## Introduction

1.    This is a suit brought by a consumer, Dana Stephenson, against an automobile dealership, Exclusive Motor-Sports LLC, Exclusive Motor Sports & Collision Center LLC, and Exclusive Motor Cars LLC (collectively, "Exclusive Motor Sports"), that sold her a motor vehicle with a loan agreement only to later prepare an altered and forged loan agreement with a credit union, Bethpage Federal Credit Union ("BFCU").  Plaintiff asserts claims under the Truth-in-Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Equal Credit Opportunity Act ("ECOA") and further asserts state law claims for declaratory relief and for common-law fraud and violations of New York General Business Law § 349.

-1-

## Parties

2. Plaintiff is a resident of Weehawken, New Jersey.

3. Defendant Exclusive Motor-Sports LLC is a New York corporation with its principal place of business, a dealership, at 279 Route 32, Central Valley, New York 10917.

4. Defendant Exclusive Motor Sports & Collision Center LLC is a New York corporation with its principal place of business, a dealership, at 279 Route 32, Central Valley, New York 10917.

5. Defendant Exclusive Motor Cars LLC is a New York corporation with its principal place of business, a dealership, at 279 Route 32, Central Valley, New York 10917.

6. Defendant BFCU is a federally chartered credit union with its principal place of business at 899 South Oyster Bay Road, Bethpage, New York 11714.

## Jurisdiction and Venue

7. This court has federal question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1640, 15 U.S.C. § 1681n, 15 U.S.C. 1681o, and 15 U.S.C. § 1691e.

8. This Court has supplemental jurisdiction under 28 U.S.C § 1367(a).

9. This court has jurisdiction over the Defendants Exclusive Motor Sports, because it is a resident of New York.

10. This court has jurisdiction over the Defendant BFCU, because it is a resident of New York.

11. Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

12. Venue is also proper in this district because the defendants transact business in this district and the interests of justice require maintenance of this action in this district.

## Facts

13. On or about February 16, 2019, Plaintiff visited Exclusive Motor Sports with her then-boyfriend.

14. Exclusive Motor Sports sells cars and provides financing to consumers at large.

15. Plaintiff agreed to help her boyfriend at the time afford a car by becoming a co-signer.

16. The car dealer, Saaed Moslem, the owner and manager of Exclusive Motor Sports, told Plaintiff that she was approved for a loan in her name that would cover the full purchase price of the car, a BMW M3, for $23,793.82 and Plaintiff completed loan documents reflecting these terms.

17. Moslem did not require any down payment or proof of income.

18. Moslem claimed that the loan was secured with Mid Hudson Valley Federal Credit Union.

19. Plaintiff signed the contract setting forth the price of the car and listing her as the "BUYER." A copy of the contract is attached hereto as <u>Exhibit A</u>.

20. Plaintiff also signed loan documents but the car dealer did not provide her with a copy of this paperwork.

21. Moslem also failed to provide any account details for the loan or any instruction for how to pay the loan. Moslem had Plaintiff sign the loan documents without providing her an opportunity to review the full terms of the paperwork.

22. Plaintiff left with the car and Moslem told her that the sale and the loan were finalized. Moslem provided Plaintiff with a copy of the contract, attached as <u>Exhibit A</u>, but no copies of the loan documents.

23. In or around mid-March 2019, several weeks after Plaintiff purchased the car, she reached out to the car dealer to request the loan account number and instruction on how to pay the loan. She also requested copies of all paperwork she had completed at the car dealership.

24. The car dealer told Plaintiff, for the first time, that the loan had been denied and that the loan documents she had signed were "null and void."

25. The car dealer further claimed that he had spoken directly with Plaintiff's then-boyfriend and had sorted out a payment plan with him that did not require Plaintiff's further involvement.

26. On or about March 25, 2019, without Plaintiff's knowledge, Exclusive Motor Sports submitted loan documents to Mid Hudson Valley Federal Credit Union in Plaintiff's name that Plaintiff never saw, signed, or approved.

27. Mid Hudson Valley Federal Credit Union sent Plaintiff a letter, dated March 28, 2019, informing her that the loan documents (that she had not authorized and did not know about) had been denied.

28. Having failed to obtain approval from Mid Hudson Valley Federal Credit Union for the assignment of the fraudulent loan documents, on or about March 28, 2019, Exclusive Motor Sports sent those loan documents to BFCU.

29. On or about March 28, 2019, BFCU obtained a consumer report about Plaintiff without a permissible purpose to do so.

30. By letter dated March 29, 2019, BFCU mailed to plaintiff a loan confirmation packet that provided payment instructions for a car loan.

31. BFCU accepted the assignment of the loan documents from Exclusive Motor Sports.

32. Under the contract, the UCC, and the "FTC abolition of the holder-in-due-course rule" that was a part of the loan contract, BFCU financed the

transaction subject to all claims and defenses that Plaintiff had related to the underlying transaction, and was liable for all of the plaintiff's claims against Exclusive Motor Sports, up to the amounts paid and owed in the transaction.

33. Confusingly, BFCU sent another letter to Plaintiff, dated April 4, 2019, which purported to propose a counter-offer to the loan documents she had not submitted or authorized.

34. Plaintiff changed addresses in or around March 2019. She therefore only learned of this correspondence from Mid Hudson Valley Federal Credit Union and BFCU, which was directed at her old address, several weeks later.

35. Due to the fraudulent loan documents, on or about May 6, 2019, Plaintiff told Moslem to take back the car, which Exclusive Motor Sports did that day.

36. That same day, Plaintiff contacted BFCU to inform it that she had not authorized any loan and demanded that BFCU cancel the loan. BFCU told Plaintiff that it would refer the matter to its fraud department which would contact her within one day.

37. BFCU's fraud department never contacted Plaintiff despite multiple attempts on her part to follow-up on the matter. BFCU never provided Plaintiff with an explanation for why the fraud department failed to contact her.

38. Instead, starting on or about May 29, 2019, Plaintiff received notices from BFCU requesting title and insurance documentation for the car that she had already returned in order to process a loan that she never applied for or authorized.

39. Plaintiff also started to receive collection notices from BFCU demanding payments on the fraudulent loan.

40. On or about October 11, 2019, Plaintiff tried again to follow up on the status of her loan with BFCU. BFCU informed her that a fraud investigation is pending but that the fraudulent loan was considered "charged out."

41. BFCU provided Plaintiff with a copy of a retail installment contract, title application, and related loan documents which revealed that Exclusive Motor Sports had forged her signature. The fraudulent documents are attached hereto as Exhibit B.

42. BFCU's fraud department still has not contacted Plaintiff.

43. On Plaintiff's credit reports, the fraudulent loan is identified as a "charge off," thereby negatively affecting her credit score.

44. Plaintiff's credit reports also reveal that BFCU obtained her credit reports on or about March 28, 2019 without authorization.

45. Plaintiff is not able to get financing and her credit limit has decreased as a result.

46. Plaintiff is not the only victim of Exclusive Motor Sports' fraudulent and deceptive conduct.

47. In or around July 2019, a grand jury indicted Moslem for, among other things, defrauding and lying to lending institutions through his operation of Exclusive Motor Sports. A copy of the unsealed indictment is attached hereto as <u>Exhibit C</u>.

48. By August 5, 2019, BFCU learned of the indictment through an email entitled "Suspected Dealer Fraud - Exclusive Motor Sport" that reads in relevant part as follows:

> Over the weekend the owners of this dealerships were arrested for fraud. It looks like they were lying about customer incomes. The article is below. As always with any deal be sure income levels make sense and when needed, verify all income. If you would like me to have access shut off to your credit union, please let me know. The dealer codes are:
>
> 110644 Exclusive Motor Sports & Collision
> 114203 Exclusive Motor Sports
>
> https://www.justice.gov/usao-sdny/pr/owners-orange-county-car-dealership-arrested-tax-and-bank-fraud-charges

49. Instead of pausing collections on all of its accounts with Exclusive Motor Sports while it investigated the accounts it had received from the dealership, BFCU issued the following directive by email: "Shut them off Mark. We'll book

what's in the pipeline now, but no further apps. Shut them off from submitting apps today."

50. In other words, BFCU told its employees to fund all open applications, pretend that it was not dealing with indicted criminals, and proceed as if nothing had happened. BFCU directed this policy toward all customers who purchased vehicles through Exclusive Motor Sports and did not just target Plaintiff.

51. Consistent with this see-no-evil/hear-no-evil approach, on or about September 26, 2019, BFCU obtained forced-place insurance—referred to by BFCU as "Collateral Protection Insurance"—on the motor vehicle and increased the scheduled loan payments on the fraudulent debt it claimed Plaintiff owed by $606 a month until the CPI premium of $2,733 and interest charges were paid.

52. BFCU claimed that it obtained the insurance according to the terms of the fraudulent loan agreement. BFCU's decision reflected company policy and was not a one-off decision with respect to Plaintiff alone.

53. BFCU continues to report the loan, including the insurance payments, to credit reporting agencies.

54. In other words, even though Exclusive Motor Sports had already taken back the car on May 6, 2019 and BFCU had been on notice since at least August 5, 2019, that Exclusive Motor Sports was indicted for submitting false credit applications to banks, BFCU decided to impose forced-place insurance on Plaintiff

for a car that was in the dealer's hands and continues to demand payment from Plaintiff for that insurance.

## Count I
### Truth in Lending Act Violations by Exclusive Motor Sports and BFCU

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

56. Exclusive Motor Sports is a creditor as defined by TILA, 15 U.S.C. § 1601, *et seq*.

57. Plaintiff is a consumer as defined by TILA, 15 U.S.C. § 1601, *et seq*.

58. Exclusive Motor Sports failed to provide the disclosures required under TILA, 15 U.S.C. § 1601, *et seq*.

59. BFCU is liable for Exclusive Motor Sports' violations of TILA pursuant to the FTC Holder Rule and the terms of the contract.

## Count II
### Fair Credit Reporting Act Violations by Exclusive Motor Sports and BFCU

60. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

61. Exclusive Motor Sport's refusal to extend credit in accordance with the first loan agreement was an "adverse action" within the meaning of the FCRA, 15 U.S.C. § 1681a(k).

62. Exclusive Motor Sport failed to provide the notice of adverse action required by the FCRA, 5 U.S.C. § 1681m.

63. For its willful violation of the FCRA, Exclusive Motor Sport is liable to Plaintiff for her actual damages or statutory damages of between $100 to $1,000, punitive damages, and reasonable attorney fees under 15 U.S.C. § 1681n.

64. In the event that the FCRA violation is determined to be negligent rather than willful, Exclusive Motor Sports is liable to Plaintiff for her actual damages and reasonable attorney fees under 15 U.S.C. § 1681o.

65. BFCU is liable for Exclusive Motor Sports' violations of the FCRA pursuant to the FTC Holder Rule and the terms of the contract.

### Count III
### Fair Credit Reporting Act Violations by BFCU

66. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

67. Under § 1681b(f), a person, including a corporation, may not use or obtain a consumer report for unauthorized purposes.

68. By obtaining Plaintiffs consumer report on or about March 28, 2019 without a permissible purpose, Defendant BFCU violated the FCRA.

69. Defendant BFCU violated the FCRA by failing to accurately and lawfully certify a permissible purpose to consumer reporting agencies.

70. As a result of BFCU's conduct, Plaintiff suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

71. BFCU knew or should have known that there was no permissible purpose to obtain Plaintiff's credit report.

72. BFCU ignored Exclusive Motor Sports' history of bank fraud, for which Moslem is under indictment.

73. BFCU also failed to follow its own policies and procedures in responding to Plaintiff's complaints about the impermissible pull and fraudulent loan documents, indicating that it was aware of its wrongful conduct.

74. For its willful violation of the FCRA, BFCU is liable to Plaintiff for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant BFCU was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

## Count IV
### Equal Credit Opportunity Act Violations by Exclusive Motor Sports and BFCU

75. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

76. Exclusive Motor Sport's refusal to extend credit in accordance with the first installment sales contract was an "adverse action" within the meaning of ECOA, 15 U.S.C. § 1691(d).

77. Exclusive Motor Sport failed to provide the notice of adverse action required by ECOA, 15 U.S.C. § 1691(d)(2).

78. For its violations of ECOA, Exclusive Motor Sport is liable to Plaintiff for actual damages, punitive damages of up to $10,000, and reasonable attorney fees under 15 U.S.C. § 1691e.

79. BFCU is liable for Exclusive Motor Sports' violations of ECOA pursuant to the FTC Holder Rule and the terms of the contract.

## Count V
### Declaratory Relief against Exclusive Motor Sports and BFCU

80. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

81. Plaintiff is entitled to a court order declaring that the fraudulent loan agreement between Plaintiff, Exclusive Motor Sports, and BFCU is null and void, requiring BFCU to release Plaintiff from any obligations under that agreement and to stop reporting to credit agencies that the agreement has been charged off.

### Count VI
### Common Law Fraud Violations by Exclusive Motor Sports and BFCU

82. Plaintiff restates, realleges, and incorporates by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

83. Exclusive Motors Sports' agents intentionally, recklessly and/or negligently made misrepresentations to Plaintiff regarding the price of the car, the amount Plaintiff would be financing to purchase the car, and whether that financing had been approved.

84. Defendants' agents negligently, willfully, intentionally and/or recklessly concealed from Plaintiff that the loan agreement had been denied.

85. Exclusive Motors Sports then, without Plaintiff's knowledge, created loan documents containing different terms from those contained in the original loan documents and forged Plaintiff's signature on the documents.

86. Without Exclusive Motor Sports' false representations, Plaintiff would not have entered into a retail installment sales contract with Exclusive Motor Sports.

87. Plaintiff has been actually damaged by Exclusive Motor Sports' false representations by being stuck with a loan that she did not agree to and which continues to negatively affect her credit.

88. Plaintiff relied on the Exclusive Motor Sports' misrepresentations and was induced to purchase the aforementioned automobile.

89. The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

90. BFCU is liable for Exclusive Motor Sports' violations of state law pursuant to the FTC Holder Rule and the terms of the contract.

### Count VII
### Violations of New York General Business Law § 349 by Exclusive Motor Sports and BFCU

91. Plaintiff restates, realleges, and incorporates by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

92. Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

93. Exclusive Motor Sports' actions in inducing a consumer to purchase a car and then preparing forged loan documents and forging that consumer's

signature to it violated GBL § 349 by falsely and deceptively forcing loans on consumers without consent.

94. Exclusive Motor Sports have caused Plaintiff to suffer actual economic injury in the form of a loan to which she did not agree and which continues to affect her credit.

95. BFCU is also independently liable under GBL § 349 for imposing forced-place insurance on Plaintiff and charging Plaintiff for that insurance when the vehicle was already in the possession of Exclusive Motor Sports and when BFCU's own email correspondence shows that it was on notice that it was dealing with a fraudulent criminal enterprise that was already the subject of an unsealed federal indictment for bank fraud.

96. BFCU continues to report the loan, including the insurance payments, to credit reporting agencies and thereby continues to pursue those payments. In so doing, BFCU continues to engage in materially deceptive conduct and has ratified its wrongful acts.

97. By and through their acts, omissions, concealments, and misrepresentations, Defendants violated GBL § 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and have done so knowingly or willfully.

98.   As a direct and proximate result of Exclusive Motor Sports' deceptive acts and practices, committed in violation of GBL §349, Plaintiff was also damaged in that she, among other things, suffered fear, stress, anxiety and difficulty sleeping, and suffered monetary damages as set forth above.

99.   As a direct and proximate result of BFCU's practices, committed in violation of GBL §349, Plaintiff was damaged in that she has suffered pecuniary harm through BFCU's continued pursuit of insurance payments.

100.   Plaintiff claims all damages to which she is entitled arising from Defendants' violations of GBL § 349.

101.   BFCU is liable for Exclusive Motor Sports' violations of GBL § 349 pursuant to the FTC Holder Rule and the terms of the contract.

### Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests that this Court enter a Judgment:

A.   Declaring that Defendants' conduct complained of herein violates Plaintiff's rights under the TILA, FCRA, EOCA, and state law;

B.   Declaring that the loan agreement and any contract to purchase the car at issue are null and void;

C.   Enjoining Defendants from reporting to credit agencies that Plaintiff had a loan agreement with Defendants or failed to honor the terms of any loan agreement;

D.      Directing Defendants to pay Plaintiff actual damages in an amount to be determined by a jury;

E.      Directing Defendants to pay Plaintiff statutory damages as provided under the TILA, 15 U.S.C. § 1640, and FCRA, 15 U.S.C. § 1681, *et seq.*;

F.      Directing Defendants to pay Plaintiff civil penalties as provided under New York General Business Law § 349;

G.      Directing Defendants to pay Plaintiff punitive damages in an amount to be determined by a jury;

H.      Awarding Plaintiff reasonable attorney's fees, costs and disbursements of this action;

I.      Granting such other and further relief as this Court deems just and proper.

## Jury Demand

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated:      New York, New York
              October 14, 2020

                                          Respectfully submitted,
                                          Bromberg Law Office, P.C.

                                          By: /s/ *Brian L. Bromberg*
                                                  Brian L. Bromberg
                                                  One of Plaintiffs' Attorneys

<u>Attorneys for Plaintiffs</u>:
Brian L. Bromberg

Joshua Tarrant-Windt
Bromberg Law Office, P.C.
26 Broadway, 27th Floor
New York, NY 10004
Tel: (212) 248-7906

Thomas R. Breeden\*
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel: (703) 361-9277

\* admitted *pro hac vice*