

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

**MICHELLE A. BHOLAN**
PARTNER
(516) 357-3137
michelle.bholan@rivkin.com

October 21, 2020

**VIA ECF**

The Honorable Philip M. Halpern, U.S.D.J.
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 1007

>    Re:   Stephenson v. Exclusive Motor-Sports LLC, et al.
>          Docket No. 20-cv-01332(PMH)

Dear Judge Halpern:

I write on behalf of Bethpage Federal Credit Union ("BFCU"), a Defendant in the above-referenced case. Specifically, I write in accordance with Rule 2.C. of Your Honor's Individual Practices in Civil Cases in response to the letter (the "Letter") filed by Plaintiff Dana Stephenson ("Plaintiff") requesting a pre-motion conference concerning Plaintiff's anticipated motion for leave to file a third amended complaint.

Although a court should generally freely grant leave to amend, "a court may deny leave to amend where amendment would be futile." Brunson v. City of New York, No. 17-cv-6605(ALC), 2019 U.S. Dist. LEXIS 54280, at *13 (S.D.N.Y. Mar. 29, 2019). "Substantive issues, as opposed to issues stemming from inadequate or inartful pleading, generally render an opportunity to replead as futile." Meiliang Yue v. Dep't of Treasury, 18-cv-6321(ALC), 2019 U.S. Dist. LEXIS 17658, at *8 (S.D.N.Y. Feb. 1, 2019).

This is Plaintiff's *third* attempt to assert a claim under Section 349 of the General Business Law ("GBL") where no such claim exists. Specifically, in Count VII of the proposed third amended complaint,

RIVKIN RADLER LLP

The Honorable Philip M. Halpern, U.S.D.J.
October 21, 2020
Page 2

Plaintiff purports to assert a claim under GBL § 349 against BFCU premised upon (i) the Exclusive Motor Defendants' liability thereunder (the "Indirect GBL Claim"); and (ii) BFCU's direct liability thereunder (the "Direct GBL Claim"). Notably, however, Count VII is deficient under either theory of liability as alleged in Plaintiff's second amended complaint, and Plaintiff's attempt to cure those deficiencies in the proposed third amended complaint fails.[1]

"To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." New York Univ. v. Factory Mutual Ins. Co., No. 15-cv-8505(NRB), 2018 U.S. Dist. LEXIS 53418, at *41 (S.D.N.Y. Mar. 27, 2018).

First, with respect to the Indirect GBL Claim, the third amended complaint is devoid of a single factual allegation that remotely suggests that the Exclusive Motor Defendants' conduct had any impact whatsoever on the public at large, which is fatal to Plaintiff's Indirect GBL claim. See Miller v. HSBC

---

[1] To the extent that this Court denies the instant motion, BFCU reserves its right to file a pre-motion conference letter seeking leave to file a motion to dismiss the GBL § 349 claim asserted in Plaintiff's second amended complaint. Should this Court grant the instant motion (i) BFCU will follow Rule 4.C of Your Honor's Individual Practices in Civil Cases and exchange two sets of pre-motion conference letters; or (ii) alternatively, BFCU respectfully requests that, in light of the fact that the parties have already exchanged two sets of letters in connection Plaintiff's GBL § 349 claim, the Court allow this letter to serve as BFCU's pre-motion conference letter seeking the Court's permission to file a motion to dismiss the GBL § 349 claim asserted in Plaintiff's third amended complaint.

**RIVKIN RADLER** LLP

The Honorable Philip M. Halpern, U.S.D.J.
October 21, 2020
Page 3

Bank USA, N.A., No. 13-cv-7500, 2015 U.S. Dist. LEXIS 16736, at *19 (S.D.N.Y. Feb. 10, 2015) (dismissing GBL § 349 claim where plaintiff did not allege damage to the consuming public at large and, instead, alleged nothing more than injury to herself). Indeed, the Exclusive Motor Defendants' alleged conduct of forging Plaintiff's signature on a loan document submitted on behalf of Plaintiff could not possibly impact anyone other than Plaintiff. Plaintiff attempted to remedy this defect through her first amended complaint by pointing to an indictment (the "Indictment") in support of her contention that she "is not the only victim of [the] Exclusive Motor [Defendants'] fraudulent and deceptive conduct," but the Indictment deals with entirely unrelated conduct and likewise fails to identify any conduct that could have an impact on *consumers*. Instead, the Indictment is against Mehdi Moslem and Saad Moslem (collectively, the "Moslems") who purportedly owned Defendant Exclusive Motor Sports LLC ("Exclusive"), and alleges that (i) the Moslems concealed Exclusive's profits to decrease their tax liability; (ii) the Moslems furnished false information regarding their personal finances to secure loans for Exclusive and/or Saaed Moslem; and (iii) Saaed Moslem made false statements and material omissions in a personal bankruptcy proceeding.

Notably, because the Indirect GBL Claim as asserted against the Exclusive Motor Defendants fails, it likewise fails as asserted against BFCU. Indeed, the Holder Rule provides for liability to any holder of a consumer credit contract only where there is liability to the original contracting party.

Second, Plaintiff's Direct GBL Claim fares no better as Plaintiff has similarly failed to identify any conduct by BFCU to Plaintiff that was consumer-oriented. Plaintiff alleges that after BFCU learned of the Indictment, it told its employees to fund all open applications for loans submitted by consumers through the Exclusive Motor Defendants. Notwithstanding the fact that this conduct had no impact on Plaintiff, whose loan was funded months prior to BFCU's knowledge of the Indictment, Plaintiff fails to allege why this

RIVKIN RADLER LLP

The Honorable Philip M. Halpern, U.S.D.J.
October 21, 2020
Page 4

conduct is deceptive or how it was materially misleading to BFCU's consumers (because it was not).[2]  In any event, the conduct that Plaintiff complains of is that BFCU "impos[ed] forced-place insurance on Plaintiff and charg[ed] Plaintiff for that insurance when the vehicle was already in the possession of Exclusive Motor Sports and when BFCU's own email correspondence shows that it was on notice that it was dealing with a fraudulent criminal enterprise that was already the subject of [the Indictment]."  Thus, the only conduct by BFCU directed at Plaintiff that Plaintiff can identify is the quintessential single-shot transaction that demonstrates an alleged injury only to Plaintiff. and is insufficient to demonstrate a broad impact on consumers.  See Womack v. Capital Stack, LLC, No. 18-cv-04192(ALC), 2019 U.S. Dist. LEXIS 148644, at *28 (S.D.N.Y. Aug. 30, 2019) (noting that "[a] 'single shot transaction' tailored to a specific consumer is insufficient to show a 'broad impact on consumers'" and, instead, "the conduct must amount to a 'standard practice that was [or is] routinely applied to all [consumers]' who engaged with the defendant.")

Plaintiff then alleges that BFCU obtained the insurance according to the terms of "the fraudulent loan agreement" and that "BFCU's decision reflected company policy and was not a one-off decision with respect to Plaintiff alone."  Although far from a model of clarity, to the extent that Plaintiff alleges that it

---

[2] Although not alleged, any suggestion that BFCU's knowledge of an Indictment for conduct that is entirely unrelated to loans submitted by the Exclusive Motor Defendants on behalf of consumers rendered BFCU's conduct in funding loans submitted by the Exclusive Motor Defendants on behalf of consumers somehow deceptive and materially misleading would be wholly insufficient to allege the type of conduct necessary to sustain a GBL § 349 claim.

RIVKIN RADLER LLP

The Honorable Philip M. Halpern, U.S.D.J.
October 21, 2020
Page 5

was BFCU's company policy to obtain insurance according to fraudulent loan agreements, such a bald and conclusory statement that is bereft of a single allegation in support thereof cannot support a claim under GBL § 349.  If, instead, Plaintiff is alleging that it was BFCU's company policy to obtain forced-place insurance according to the terms of its loan agreements, such conduct is not deceptive or materially misleading.  It appears that, despite her numerous attempts to identify a "standard practice" by BFCU, Plaintiff has failed to identify any policy that was "routinely applied" to all consumers that dealt with BFCU, let alone one that was deceptive or materially misleading.

Based on the foregoing, any attempt by Plaintiff to amend the GBL § 349 claim as asserted in the proposed third amended complaint would be futile.  See, e.g., Zhang v. Akami, Inc., No. 15-cv-4946(VSB), 2017 U.S. Dist. LEXIS 158112, at *31 (S.D.N.Y. Sept. 26, 2017) (denying request to amend GBL § 349 claim where such amendment would be futile because "[e]ven if Plaintiff were to supplement his Amended Complaint with additional facts bolstering his allegations regarding Defendants' behavior toward their employees, this would not transform this employment dispute into a case concerning 'consumer-oriented' conduct with a broader impact on consumers.")

Respectfully submitted,

RIVKIN RADLER LLP

*Michelle A. Bholan*

Michelle A. Bholan

cc: All counsel of record (via ECF)